LIPEZ, Circuit Judge.
In this appeal of Angel Luis Pizarro-Morales (“Pizarro”) from his conviction and sentence for conspiracy to distribute cocaine and heroin and for possession with intent to distribute cocaine, we must examine the impact of Alleyne v. United States, — U.S.-, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), on the aggravated drug conspiracy and possession convictions. Pursuant to that inquiry, we hold that the district court erred by failing to instruct the jury on the essential element of individualized drug quantity for the aggravated conspiracy count and the essential element of drug quantity for the aggravated possession count before applying a statutory sentencing range that included a mandatory minimum sentence on each count. However, since we “conclude! ] beyond a reasonable doubt that the omitted element[s] [were] uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the errorfs],” we find the instructional Alleyne errors harmless. Neder v. United States, 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Therefore, we affirm Pizarro’s convictions for the aggravated conspiracy and possession charges with enhanced drug quantities under 21 U.S.C. § 841(b)(1)(A).
Still, we must vacate Pizarro’s sentence and remand for a fourth sentencing under § 841(b)(1)(A) because the district court overlooked our prior remand order by refusing to engage in credibility assessments with respect to the conspiracy drug quantity the court attributed to Pizarro and by refusing to consider Pizarro’s arguments regarding the firearm enhancement.
I.
A. First Sentencing and Appeal
After a ten-defendant trial that lasted approximately seven months in 1999, Pizarro was found guilty of conspiracy to distribute cocaine and heroin and possession with intent to distribute cocaine. In 2002, pursuant to an order of the First Circuit Judicial Council, the case was reassigned for sentencing.[1]
The statutory sentencing ranges for drug conspiracy and possession, prescribed in 21 U.S.C. § 841(b)(1), vary depending upon the amount of drugs involved. For a conspiracy or possession that involves only small or non-quantified amounts of cocaine or heroin, there is no mandatory minimum sentence and the statutory maximum sentence is twenty years of imprisonment. See 21 U.S.C. § 841(b)(1)(C). At the other end of the spectrum, when a conspiracy or possession involves five kilograms or more of cocaine or one kilogram or more of a mixture or substance containing a detectable amount of heroin, the sentencing range runs from a mandatory minimum of ten years to a maximum of life imprisonment. Id. § 841(b)(1)(A).[2]
*288 At sentencing, the district court determined that § 841(b)(l)(A)’s statutory maximum of life imprisonment applied because the conspiracy involved five kilograms or more of cocaine or one kilogram or more of a mixture or substance containing heroin. By a preponderance of the evidence, the court found Pizarro accountable for more than 150 kilograms of cocaine and applied a two-level enhancement for weapon possession and a three-level role enhancement. The court then imposed a life sentence, which at that time was mandated by the Sentencing Guidelines. Pizarro appealed his conviction and sentence. We affirmed Pizarro’s conviction but vacated his sentence because of error under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). See United States v. Casas, 425 F.3d 23, 59-60 (1st Cir.2005).[3]
Pizarro and multiple co-appellants also argued that there was error under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the Supreme Court held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Id. at 490, 120 S.Ct. 2348. Pizarro and his co-appellants asserted that since drug quantity for the conspiracy count was a fact that increased the statutory maximum sentence, it should have been found by a jury beyond a reasonable doubt. They argued that in the absence of such a jury determination, § 841(b)(l)(C)’s default statutory maximum sentence of twenty years should have applied to the conspiracy count.
In response to this argument, we held that “for Apprendi purposes, it is the drug quantity attributable to the entire conspiracy that determines the statutory maximum.” Casas, 425 F.3d at 66 n. 58. We concluded that any Apprendi error, if one occurred, was harmless because (1) the evidence overwhelmingly established that the conspiracy involved at least five kilograms of cocaine or one kilogram of heroin, amounts that support a statutory maximum of life imprisonment, and (2) Pizarro and his co-appellants had not pointed to any evidence that the conspiracy-wide quantity was under that threshold amount or offered any argument as to how the jury could have found otherwise. Id. at 65-66. We explained that the appellants did not contest the evidence of conspiracy-wide drug quantity-the amount that sets the statutory maximum for Apprendi purposes. Id. at 66 & n. 58. We therefore ordered that “on remand for re-sentencing the appropriate statutory maximum will be life imprisonment as stated in § 841(b)(1)(A).” Id. at 66.
In remanding, we “clarified] that the jury verdict of guilty did not determine the amount of drugs attributed to each defendant,” id. at 64 n. 56, which was necessary for sentencing under the Sentencing Guidelines. Cooperating witnesses had testified about drug quantity, and, at sentencing, defendants had called into question the credibility of those witnesses. Id. We explained that the district court had to make credibility determinations in order to *289 calculate individualized drug quantity, and we made clear that “[a]ny conclusion as to individual drug quantity should be based on review of the entire record.” Id. We also observed that a number of the Presentence Reports (“PSRs”) contained the “defect” of not including “findings as to the quantities or types of drugs attributable to the individual defendants.” Id. at 63.
Pizarro and his co-appellants had also argued that the successor judge responsible for the initial sentencing had not adequately familiarized himself with the voluminous record. We held that a replacement judge could become sufficiently familiar with the record to assess credibility, but we declined to analyze the sentencing judge’s familiarity because we were vacating the sentences on independent Booker grounds. Casas, 425 F.3d at 56-57.
B. Second Sentencing and Appeal
In 2006, the district court found Pizarro responsible for more than 4,200 kilograms of cocaine. The court imposed a two-level firearm enhancement and a two-level enhancement for Pizarro’s leadership role in the offense. The court resentenced Pizarro to 360 months (30 years) in prison. Pizarro again appealed, and we vacated his sentence for a second time because the district court had not analyzed witness credibility in calculating the drug quantity in the conspiracy foreseeable to Pizarro. United States v. Correy, 570 F.3d 373, 378-82 (1st Cir.2009). We ordered the district court on remand to make independent credibility assessments as necessary to resolve the facts in dispute. Id. at 379-82, 400, 402.
We also found that Pizarro’s PSR had the same problematic lack of support that, on Pizarro’s first appeal, we had specifically noted-in the PSRs of several of Pizarro’s co-appellants. Id. at 398-400. Therefore, we ordered the Probation Office to provide .Pizarro with a proper PSR that identified specific drug quantities attributable to him, “include[d] references to the trial record” that supported those drug quantities, and “identifie[d] the trial transcripts which supported] any conclusion that he possessed weapons or that weapon possession by co-conspirators was foreseeable to him.” Id. at 384, 401.[4] We further ordered that “Pizarro should have a real opportunity to challenge [an] inference [that he could foresee the use of weapons] by arguing the question of foreseeability to a fact-finder willing to consider his arguments,” and we left Pizarro’s challenge to a leadership enhancement, a fact-specific issue, to be resolved on remand. Id. at 401.
C. Third Sentencing and Appeal
Pizarro’s ease was reassigned for a second time to a different district court judge because the former sentencing judge had retired. On May 15, 2012, the district court found Pizarro responsible for in excess of 150 kilograms of cocaine and resentenced him under § 841(b)(1)(A) to 280 months (23 1/3 years) of imprisonment as to each count to be served concurrently. Pizarro now appeals for a third time, making numerous arguments, including that the dis *290 trict court committed an Alleyne error by applying a mandatory minimum sentence without the requisite drug quantity findings by the jury. Notably, that argument challenges the convictions for the aggravated offenses with enhanced drug quantities under § 841(b)(1)(A). He also maintains that the district court committed multiple sentencing errors, some of which resulted from its failure to comply with our remand instructions in Casas and Correy.
II.
We first analyze the claim of Alleyne error related to Pizarro’s convictions.
A. The Alleyne Rule
In Alleyne, the Supreme Court held that “any fact that increases the mandatory minimum is an ‘element’ that must be submitted to the jury.” Alleyne, 133 S.Ct. at 2155. Therefore, a district court errs by applying a statutory mandatory minimum as the sentencing starting point without a jury finding on the fact that triggers that minimum. The Supreme Court held that such a rule was required by the Apprendi principle that “[a]ny fact that, by law, increases the penalty for a crime is an ‘element’ that must be submitted to the jury and found beyond a reasonable doubt.” Alleyne, 133 S.Ct. at 2155 (citing Apprendi 530 U.S. at 483 n. 10, 490, 120 S.Ct. 2348). In Alleyne, the Supreme Court expressly overruled its prior holding in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), that the jury did not need to find a fact that increases the mandatory minimum. Alleyne, 133 S.Ct. at 2155. The government properly concedes that Alleyne error occurred with respect to both the conspiracy and possession counts.
B. The Application of Alleyne. to this Appeal
The Supreme Court’s decision in Alleyne applies to any case pending on direct appeal at the time Alleyne was decided. See Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (“[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a ‘clear break’ with the past.”). In Ramirez-Burgos v. United States, 313 F.3d 23 (1st Cir.2002), we held that a new Supreme Court precedent — Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) — applied retroactively to Ramirez’s case. Ramirez-Burgos, 313 F.3d at 29. We had previously affirmed Ramirez’s convictions, vacated his sentence, and remanded to the district court for resentencing. Id. at 27. After Ramirez was resentenced and one day after he filed his reply brief in his second appeal, the Supreme Court decided Jones. Id. at 28. Citing Griffith, we held that Ramirez could bring a new claim of jury-instruction error under Jones because Ramirez’s case was still on direct appeal at the time Jones was decided. Id. at 29 (citing Griffith, 479 U.S. at 328, 107 S.Ct. 708). See also Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) (“Final judgment in a criminal casé means sentence. The sentence is the judgment.”); United States v. Dodson, 291 F.3d 268, 275-76 (4th Cir.2002) (holding that where court of appeals affirms convictions but vacates sentence and remands for resentencing on any count, judgment of conviction is not final as to all counts).
Alleyne was decided in 2013 after we had twice vacated Pizarro’s sentence and remanded for resentencing, and after Pizarro had filed his opening brief in this third appeal. The fact that the Supreme Court denied Pizarro’s petition for a writ *291 of certiorari after his first appeal, Pizarro-Morales v. United States, 546 U.S. 1199, 126 S.Ct. 1397, 164 L.Ed.2d 99 (2006), does not change the fact that his judgment of conviction was not final at the time Alleyne was decided, given that we had vacated his sentence and remanded for resentencing. See Berman, 302 U.S. at 212, 58 S.Ct. 164 (indicating that a judgment of conviction would not be final if the sentence were vacated); see also Mercer v. Theriot, 377 U.S. 152, 153, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964) (per curiam) (holding “it is settled that [the Supreme Court] may consider questions raised on the first appeal [after which the Court denied a petition for a writ of certiorari], as well as those that were before the court of appeals upon the second appeal,” after which the Court granted a petition for a writ of certiorari (internal quotation marks omitted)); Dodson, 291 F.3d at 276 n. 3 (citing Mercer for the proposition that following a second direct appeal brought after a resentencing hearing ordered by the court of appeals in a criminal defendant’s first direct appeal, the defendant can petition the Supreme Court for certiorari as to every issue, including those the court of appeals denied in his first appeal).
Therefore, as the government recognizes in its supplemental brief,[5] Pizarro’s case was pending on direct appeal at the time that the Supreme Court handed down Alleyne, and Pizarro can now challenge his convictions under the new rule announced in Alleyne. See Ramirez-Burgos, 313 F.3d at 29.
C. The Alleyne Errors Here
Before explaining the Alleyne errors that the government concedes, we must first address the government’s claim that Pizarro may have waived his Alleyne argument because of the way he conducted this appeal. The government takes the position that “[w]hen Pizarro filed his appellate brief on February 13, 2013, he had the opportunity but failed to raise on appeal the claim that his sentence was imposed in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), since the 10-year mandatory minimum was based on the court’s findings as to drug quantity.” However, the government is simply wrong. Pizarro did raise his Alleyne claim in his opening brief by arguing that “a conspiracy-wide, judicial determination of quantity by a preponderance [of the evidence] for the purpose of establishing a statutory sentencing range in a 21 U.S.C. § 846 conspiracy is error.” He concluded that “after Apprendi, a jury should be required to make an individual determination of drug quantity beyond a reasonable doubt to establish a statutory sentencing range in a 21 U.S.C. § 846 conspiracy.” The argument that the “statutory sentencing range” was applied in error inescapably encompassed an Alleyne claim regarding the mandatory minimum. As the government says he should have done, Pizarro cited Apprendi to support this argument. Hence, under the standard set out by the government itself, Pizarro raised his Alleyne claim on appeal in his opening brief.[6]
Moreover, in his supplemental brief filed after oral argument, Pizarro specifically characterizes his claim as one under Alleyne. Under our precedent on Apprendi, Pizarro’s supplemental brief alone would have been sufficient to raise the Alleyne *292 claim. See United States v. LaFreniere, 236 F.3d 41, 48 (1st Cir.2001) (finding that Apprendi issue was “properly submitted for disposition” where “we extended an invitation to LaFreniere and the government to supplement their briefs addressing the possible relevance of Apprendi ”). Hence, we reject the government’s position in its supplemental brief that Pizarro’s ‘Alleyne claim is potentially waived” on appeal.
Under Apprendi and now Alleyne, each of the subsections of 21 U.S.C. § 841(b)(1), with its associated drug quantities and sentencing ranges, is a separate crime. Indeed, the Supreme Court has so held. Citing Alleyne and Apprendi, the Supreme Court in Burrage v. United States, — U.S.-, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014), explained that because an aggravating element in § 841(b)(1) — that death results from the use of the distributed drug — “increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.” Burrage, 134 S.Ct. at 887 (citing Alleyne, 133 S.Ct. at 2162-63; Apprendi, 530 U.S. at 490, 120 S.Ct. 2348).[7] Burrage concluded that a violation of § 841(a)(1), without a finding on the “death results” aggravating element, is a lesser-included offense of the aggravated offense that includes the “death results” element under § 841(b)(1). 134 S.Ct. at 887 n. 3. See also United States v. Pena, 742 F.3d 508, 517, 519 (1st Cir.2014) (same). Just as the “death results” element makes the distribution of drugs where death results a separate crime from the distribution of drugs without a death resulting, drug quantity in § 841(b)(1) creates aggravated conspiracy and possession offenses.
Under Alleyne, the operative question for a drug conspiracy is whether it is the individualized drug quantity that is a “fact that increases the mandatory minimum” sentence, Alleyne, 133 S.Ct. at 2155. We have already answered that question in United States v. Colón-Solís, 354 F.3d 101 (1st Cir.2004), where we held that a mandatory minimum “is made potentially available by a finding that the conspiracy as a whole handled (or at least contemplated) the necessary triggering amount,” but a mandatory minimum “cannot be applied in [a particular coconspirator’s] case without an individualized finding that the triggering amount was attributable to, or foreseeable by, him.” Id. at 103.[8] Colón-Solís was decided prior to Alleyne; therefore, after Colón-Solís, that individualized finding was made by the sentencing judge. However, following the Supreme Court’s decision in Alleyne, the drug quantity that triggers the mandatory minimum for a 21 U.S.C. § 846 conspiracy, like the drug quantity that triggers the statutory maximum under Apprendi, must now be found by a jury beyond a reasonable doubt.[9] But, those quantities serve different pur *293 poses: while it is the conspiracy-wide quantity that governs the statutory maximum, Casas, 425 F.3d at 66 n. 58, it is the individualized quantity, i.e., the quantity that is foreseeable to the defendant, that triggers the mandatory minimum, Colón-Solis, 354 F.3d at 103.
Having been indicted for conspiring to possess with intent to distribute 1.4 kilograms of heroin and 9,445 kilograms of cocaine, Pizarro most recently was sentenced on the conspiracy count to 23 1/3 years in prison under 21 U.S.C. § 841(b)(1)(A), which applies a mandatory minimum sentence of ten years imprisonment. Pizarro is correct, however, that the jury did not make a finding with respect to the quantity of drugs in the conspiracy foreseeable to him.[10] Indeed, we have already held that to be the case: “We wish to clarify that the jury verdict of guilty did not determine, the amount of drugs attributed to each defendant.” Casas, 425 F.3d at 65 n. 56. Therefore, Alleyne error occurred in Pizarro’s case in the conspiracy conviction.
There was also Alleyne error in Pizarro’s possession conviction. He was indicted for possession with intent to distribute eighty-one kilograms of cocaine and, as with the conspiracy count, was sentenced on the possession count to 23 1/3 years of imprisonment under § 841(b)(1)(A), carrying the ten-year mandatory minimum. However,, the jury did not make the requisite finding of drug quantity for that sentence. In fact, the jury was instructed that quantity was irrelevant: “The United States is not required to prove that the amount or quantity was as charged in the indictment. It need only prove beyond reasonable doubt that there was a measurable amount of the controlled substance.”[11]
Henceforth, under Alleyne and Apprendi, the jury must find the mandatory-minimum and statutory-maximum triggering elements. In a drug conspiracy or possession conviction with a mandatory minimum and statutory maximum based on drug quantity, the jury must find those requisite drug quantities.[12] For example, for a cocaine conspiracy conviction under § 841(b)(1)(A), which imposes a mandatory minimum of ten years and a statutory maximum of life imprisonment, the jury must now find that the defendant (1) conspired, § 846; (2) knowingly or intentionally to distribute cocaine, § 841(a)(1); (3) *294 in a conspiracy that involved a total of five kilograms or more of cocaine, § 841(b)(1)(A); Apprendi, 530 U.S. at 490, 120 S.Ct. 2348; (4) where at least five kilograms of cocaine were foreseeable to the defendant, § 841(b)(1)(A); Alleyne, 133 S.Ct. at 2155; Colón-Solís, 354 F.3d at 103.[13] For a possession conviction under § 841(b)(1)(A), a crime that by its nature only assesses the conduct of an individual, rather than the conduct of co-conspirators, the jury must find that the defendant (1) knowingly or intentionally possessed with intent to distribute, § 841(a)(1); (2) at least five kilograms of cocaine, § 841(b)(1)(A); Apprendi 530 U.S. at 490, 120 S.Ct. 2348; Alleyne, 133 S.Ct. at 2155.[14]
D. The Nature of Alleyne Error
There are different forms of Alleyne error that can lead to a sentence, imposed after a jury trial, involving the improper application of a mandatory minimum without the requisite jury finding. One form of Alleyne error is analyzed as a trial error, another as a sentencing error. The nature of the Alleyne error affects the remedy that might be available to a defendant.
In Alleyne itself, the error was of the sentencing variety. The jury verdict form in Alleyne had included the applicable minimum-triggering element in that case (brandishing of a firearm) as an optional finding that the jury should consider. The jury instead “indicated on the verdict form that Alleyne had ‘[u]sed or carried a firearm during and in relation to a crime of violence,’ but did not indicate a finding that the firearm was ‘[bjrandished.’ ” Alleyne, 133 S.Ct. at 2156. The trial court, however, applied the mandatory minimum based on its own finding by a preponderance of the evidence that the defendant had brandished the weapon. Id. Thus, the error in Alleyne was confined to sentencing, where the district court made a finding on an aggravating element that was presented to and rejected by the jury. In essence, the trial judge sentenced Alleyne for “a separate, aggravated offense,” id. at 2162, that the jury had itself decided not to find beyond a reasonable doubt. See, e.g., Price v. Georgia, 398 U.S. 323, 328-29, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) (holding that where jury was instructed on both a greater offense and lesser-included offense and the jury convicted on the lesser-included offense, the double jeopardy provision prohibited retrial on the greater offense). Therefore, the Supreme Court vacated Alleyne’s sentence and “remand[ed] for re-sentencing consistent with the jury’s verdict,” id. at 2164, which would mean that Alleyne should only be sentenced for the *295 offense of using or carrying a firearm in relation to a crime of violence.
On the other hand, where a defendant was indicted for and convicted of an aggravated offense and the jury was not instructed on ’the element triggering the statutory mandatory minimum sentence, but that minimum was nevertheless applied at sentencing, the Alleyne error is analyzed as an instructional error, occurring at trial. The Supreme Court’s decision in Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), dictates this conclusion. There, the jury had found the defendant guilty of assault while armed with a deadly weapon, but the judge sentenced the defendant, over his objection, for assault while armed with a firearm, a separate, aggravated offense subject to a greater statutory maximum sentence.. See id. at 215-216, 225, 126 S.Ct. 2546. Unlike in Alleyne, the Recuenco jury had not been given the option of finding the aggravating element, i.e., that the deadly weapon was a firearm. Id. The trial court, therefore, committed Apprendi error by imposing a mandatory statutory sentencing enhancement without a jury finding on the requisite aggravating element of a firearm.[15]
The Supreme Court held that the “[fjailure to submit a sentencing factor to the jury,” which increases the statutory maximum, i.e., the Apprendi error, was “indistinguishable” from the “failure to submit an element to the jury” that occurred in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).[16] Recuenco, 548 U.S. at 220, 222, 126 S.Ct. 2546. In Neder, the district court erred by refusing to instruct the jury on “materiality” as an element of tax fraud. Neder, 527 U.S. at 4, 119 S.Ct. 1827. Recuenco explained that “[bjecause Neder’s jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt of the crimes for which the defendant was sentenced, than is the verdict here.” Recuenco, 548 U.S. at 221, 126 S.Ct. 2546. Hence, in a case where the jury was not instructed on an aggravating element and thus necessarily did not make a finding on that element, the Supreme Court explicitly equated the Apprendi error of imposing that element’s associated statutory sentencing enhancement with the Neder failure to instruct on an element of the offense. Likewise, even before the Supreme Court decided Recuenco, we too had analyzed Apprendi error as a failure to instruct the jury. See, e.g., United States v. Pérez-Ruiz, 353 F.3d 1, 17 (1st Cir.2003) (analyzing an Apprendi error in a drug conspiracy case as “the failure to submit the necessary drug type and quantity questions to the jury”).
*296 Just as an Apprendi error can result from the failure to instruct on the maximum-triggering element, an Alleyne error can result from the failure to instruct on the minimum-triggering element. Indeed, the Alleyne errors in Pizarro’s case resulted from such instructional omissions. The district court did not instruct the jury on the individualized drug quantity element of the conspiracy charge or the drug quantity element of the possession charge. Hence, an instructional Alleyne error, like an instructional Apprendi error, is properly reviewed under the Supreme Court’s jurisprudence on the failure to instruct on an element of the crime.
The distinction between the Alleyne sentencing error that occurred in Alleyne itself ánd the Alleyne instructional errors that we have here affects the availability of harmless or plain error review. In a case where the trial court made a finding on an aggravating element that was rejected by the jury (as in Alleyne itself), the standard of review makes no difference. After Apprendi and Alleyne, if a sentencing court imposes a sentence for an aggravated crime that the jury has considered and rejected, the error will always be plain and such an aggravated sentence must necessarily be vacated. On the other hand, where the court failed to instruct the jury on an aggravating element (as in Recuenco), the jury never had a chance to make a finding on that element. In such a situation, either harmless or plain error review (depending on whether the error was preserved) is appropriate to determine whether a reasonable jury necessarily would have found the aggravating element beyond a reasonable doubt. See United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir.2014); cf. United States v. Cotton, 535 U.S. 625, 631-34, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (applying plain error review to an unpreserved Apprendi error).[17]
E. Pizarro’s Preservation of the Alleyne Error at Sentencing
Although instructional errors ordinarily must be preserved at the time of trial, our precedent holds that instructional Apprendi errors are preserved even if a defendant does not object until sentencing. See, e.g., United States v. Díaz-Arias, 717 F.3d 1, 25 (1st Cir.2013). Observing that a party has an obligation to object only to something “inimical to his cause,” we have noted that a defendant would have “no interest in ensuring his eligibility for a longer sentence.” Pérez-Ruiz, 353 F.3d at 14. Moreover, we have recognized that “a defendant will not know whether there is an Apprendi error until sentencing, and then only if the court considers a sentence above the maximum.” United States v. Nelson-Rodriguez, 319 F.3d 12, 47 (1st Cir.2003). Hence, we have held that a claim of Apprendi error is preserved for appeal if a defendant at sentencing chal *297 lenges “the imposition or proposed imposition of a term that exceeds the applicable statutory maximum.” Pérez-Ruiz, 353 F.3d at 14. In Casas, we also treated Apprendi claims as preserved as long as the defendants had objected at sentencing. Casas, 425 F.3d at 59-60.[18]
In its supplemental brief, the government claims the Alleyne error was unpreserved below and applies the plain error test as part of its argument.[19] As we reported in Casas, “Pizarro objected [at his initial sentencing] that the jury did not make a finding on the issue of drug quantity. When the district judge asserted that there was no Apprendi issue, Pizarro’s counsel responded that ‘[w]e believe, Your Honor, that there is room in that respect.’” Casas, 425 F.3d at 59. We observed that this objection “by its nature raised Apprendi concerns,” id. at 60 n. 48, which also would have sufficed to raise an Alleyne claim based on the same Sixth Amendment right to a jury trial, see Alleyne, 133 S.Ct. at 2163 & n. 5 (noting that “there is no principle or logic to distinguish facts that raise the maximum from those that increase the minimum”). Although Pizarro did not explicitly object on these grounds again at his most recent sentencing hearing (his third), our precedent suggests that, assuming Pizarro did not abandon his original objection, the objection would have preserved the Alleyne claim for our review now. See United States v. Amirault, 224 F.3d 9, 14 (1st Cir.2000) (holding that- claim was preserved for subsequent appeal by objection at original sentencing hearing). We need not resolve whether Pizarro in fact preserved his Alleyne claim for this appeal, however, as we can conclude that the error was in any event harmless. See, e.g., United States v. Soto-Beníquez, 356 F.3d 1, 49 (1st Cir.2004) (“We have already determined that any Apprendi error as to drug amount or type would be harmless; a fortiori, no plain error occurred.”). We therefore presume, without deciding, that harmless error review applies here.
F. Harmless Error Review for Instructional Errors
The Supreme Court addressed harmless error review for an omitted element in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), describing the inquiry as whether it is “clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.” Id. at 18, 119 S.Ct. 1827. The Court held that “[i]n this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such *298 that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.” Id. at 17, 119 S.Ct. 1827. The concurrence by the writing judge asserts that, based on the Court’s statements in Neder and its prior precedent, the omission of an element is harmless only when the reviewing court draws two conclusions beyond a reasonable doubt: the element is uncontested, and the element is supported by overwhelming evidence. In this case of instructional Alleyne error, the concurrence takes the position that the omission would not be harmless if the defendant had asserted either below or on appeal that a properly instructed jury could have found in his favor on the omitted element. The panel need not decide whether this view of the law is correct because, in this case, we conclude beyond a reasonable doubt both that Pizarro has never contested the omitted drug quantity elements and that they were supported by overwhelming evidence.
In its supplemental brief, the government argues that Pizarro conceded that he was responsible for at least five kilograms of cocaine. We do not examine whether Pizarro affirmatively admitted that threshold quantity, however, because we conclude that, like Neder, Pizarro has not contested the omitted elements. At his first sentencing, Pizarro asserted only that the jury did not make any drug quantity findings; he did not argue that-a contrary finding on the elements was possible. Moreover, Pizarro’s argument on appeal regarding the failure to instruct on the drug quantity elements “establishes only that there was Alleyne error; it says nothing about whether that error was harmless.” See United States v. Harakaly, 734 F.3d 88, 95-96 (1st Cir.2013). Finally, while Pizarro did make credibility arguments at sentencing and on appeal to challenge the court’s drug quantity determination at sentencing, there is no indication that Pizarro’s argument called into question anything other than the sentencing court’s conclusion that Pizarro was responsible for more than 150 kilograms of cocaine. Pizarro did not argue that the jury that convicted him could have found him responsible for less than five kilograms of cocaine.[20] Hence, Pizarro did not contest the omitted drug quantity elements.
The government also argues that overwhelming evidence introduced at Pizarro’s trial established that Pizarro was responsible for at least five kilograms of cocaine, the requisite drug quantity for § 841(b)(l)(A)’s ten-year mandatory minimum. A reviewing court may conclude beyond a reasonable doubt that the omitted element was “supported by overwhelming evidence” if the evidence was of such a significant quantity and quality that it “incontrovertibly establishes” the element. Neder, 527 U.S. at 16-17, 119 S.Ct. 1827; see also United States v. Bailey, 270 F.3d 83, 89 (1st Cir.2001) (finding that evidence was not “overwhelming” because “[w]hile a judge could permissibly find those facts by a preponderance of the evidence, and a jury could permissibly find them beyond a reasonable doubt, it is not so clear that a reasonable jury must have found them beyond a reasonable doubt”); Pérez-Ruiz, 353 F.3d at 18-19 (similar). Even where the government’s evidence on the omitted element is “strong,” that evidence is not overwhelming if competing evidence is “not inherently incredible.” United States v. Prigmore, 243 F.3d 1, 22 *299 (1st Cir.2001) (citing Neder, U.S. at 19, 119 S.Ct. 1827).
In this case, overwhelming evidence supports the requisite findings of at least five kilograms. The jury found Pizarro guilty of possession with intent to distribute cocaine, and Pizarro explained in his opening brief that DEA Agent Jay Stoothoff testified that 81 kilograms of cocaine was the amount seized. See also Casas, 425 F.3d at 29, 54 n. 39 (explaining that two DEA agents identified Pizarro as one of the suspects participating in the March 21, 1994 airport transaction from which the agents secured four suitcases containing the 81 kilograms of cocaine). At Pizarro’s first sentencing hearing, Pizarro’s counsel stated that the 81 kilograms had actually been presented in court. Further, Pizarro’s own description of the evidence includes multiple witnesses testifying that Pizarro was involved in distributing quantities of cocaine well over five kilograms. In fact, evidence showed that “Pizarro coordinated the shipment of drugs through the airport in Puerto Rico,” Correy, 570 F.3d at 375, and “seven cooperating witnesses ... identified Pizarro as a member of the conspiracy and described his role and specific activities therein,” Casas, 425 F.3d at 54 n. 39. Hence, we conclude beyond a reasonable doubt that the omitted element was “supported by overwhelming evidence.” Neder, 527 U.S. at 17, 119 S.Ct. 1827.
In sum, because we have found the omitted element of drug quantity to be both uncontested and supported by overwhelming evidence, we need not decide whether the absence of a contest is required in order to find harmless error. In the circumstances of this case, the jury verdict would have been the same absent the error. We therefore find the error harmless beyond a reasonable doubt.[21]
m.
We thus turn to Pizarro’s claims of error related to his most recent sentence. Independent of the Alleyne errors, which implicated his convictions, Pizarro argues that the district court ignored our prior remand order by refusing to engage in credibility assessments with respect to the conspiracy drug quantity attributable to him and by refusing to consider his arguments regarding the firearm enhancement. We agree, and hence we must vacate his sentence.[22]
A. Individualized Drug Quantity
During the first two sentencings, the district court concluded that the jury’s guilty verdict resolved any credibility issues about the testimony relating to the drug quantity foreseeable to Pizarro. In both Casas and Correy, we explained that the district court was wrong, see Casas, 425 F.3d at 64 n. 56; Correy, 570 F.3d at *300 378-79, and we twice ordered the district court to conduct credibility assessments, “based on the whole record,” see Correy, 570 F.3d at 381, when calculating individualized drug quantity.
Pizarro pointed the district court to our decisions when arguing that credibility assessments were required for all witnesses on whose testimony the court was relying for its individualized drug quantity determination. In Correy, we explained:
On remand, the appellants developed arguments attacking the credibility and reliability of other witnesses. Though our discussion in the prior opinion was focused on Martínez and Pérez, equally applicable to all witnesses was the rationale for requiring independent credibility assessments by the sentencing judge.... [Ajfter our remand, the district court should have made credibility determinations as necessary to resolve the facts in dispute.
570 F.3d at 379 (emphasis added). Nevertheless, in the 2012 resentencing that is the subject of this appeal, the district court again took the position that “credibility is not an issue” to be considered for any witnesses other than Thomas Martínez and Israel Pérez-Delgado. Therefore, the district court relied on testimony from other witnesses without conducting any credibility assessments. This improper course, now repeated, directly contravened Correy’s explicit order.
The government claims that the following statement from the district court during the 2012 resentencing indicates that it did perform the required credibility determinations:
You point out [sic] to cross examination, to some impeachment, other testimony, but I have to part from that premise. There were convictions in this case as. to your client. Some others may have been acquitted, other matters, but if you look at the global [sic] and summarize the testimony, if you look at it globally I understand by the preponderance of the evidence it supports that drug finding.
(Emphasis added.) Contrary to what the government posits, the most natural reading of this passage, particularly in light of the district court’s explicit statement that “credibility is not an issue” for witnesses other than Martínez and Pérez-Delgado, is that yet again “the district court did not heed our instruction, but rather persisted in its view that the jury verdict was controlling.” Correy, 570 F.3d at 379.
“[W]here the district court has expressly made clear that it is not conducting a credibility inquiry, it would be disingenuous of us to act otherwise.” Id. at 381. Therefore, we must vacate Pizarro’s sentence and remand for resentencing under § 841(b)(1)(A). The district court’s credibility assessments must be based on the whole record for all witnesses on whose testimony the court has relied to calculate the conspiracy drug quantity foreseeable to Pizarro. We understand the particular burden that credibility assessments impose on the district court under the circumstances here; however, that burden does not permit a sentence that does not fully comport with all legal requirements.
B. Firearm Enhancement
Pizarro also asserts that the district court erred by refusing to consider his arguments refuting the two-point firearm enhancement. We agree. In Correy, we unambiguously asserted:
Pizarro should have a real opportunity to challenge this inference [that the conspiracy’s use of weapons would be foreseeable to Pizarro] by arguing the question of foreseeability to a fact-finder willing to consider his arguments. Thus, on remand, ... [h]e will be able to make factual arguments attacking credi *301 bility and foreseeability, which the court will consider and resolve.
Correy, 570 F.3d at 401. Nevertheless, the district court refused to hear Pizarro’s arguments concerning the firearm enhancement, incorrectly asserting numerous times that consideration of the enhancement was “outside the scope of the remand order.”
The government attempts to salvage the district court’s application of the enhancement by referring to the court’s statement that “[a]gain I mentioned that I was not going to disturb that enhancement, but even if I were to make it anew, counsel made the arguments, but I understand there has been testimony in this particular case for example and again this gentleman has not been acquitted of any Counts, other defendants have.” Contrary to the government’s argument, it appears that, as with its refusal to conduct the credibility determinations for individualized drug quantity, the district court relied on the jury verdict instead of conducting the inquiry we directed. While the court did point to witness testimony regarding the “foreseeability of possession of firearms” to Pizarro, the court erred by not considering Pizarro’s arguments regarding the enhancement or performing the credibility determinations that we said were necessary. The court must consider Pizarro’s arguments on remand.
C. Remaining Issues
1. PSR
With respect to both the individualized drug quantity and the foreseeable use of firearms, Pizarro claims that the most recent PSR repeated the deficiencies that we ordered corrected in our prior decisions. We disagree.
Previously, we directed that “the sentencing court should, on remand, provide Pizarro with a PSR which identifies specific drug quantities.” Correy, 570 F.3d at 400. We explained that, “[a]rmed with this PSR, Pizarro will be given a genuine opportunity to argue that the testimony was incredible, that it does not support the incriminating inference, and/or that it was not foreseeable.” Id. With respect to the firearm enhancement, we directed that the PSR identify trial transcript portions that support any conclusion that he possessed weapons or that weapon possession was foreseeable to him. Id. at 401. We also “ordered that the PSR include references' to the trial record.” See id. at 384.
As we ordered, the Second Amended -PSR filed on July 7, 2011 included in paragraphs 92 through 102 a synopsis of testimony with respect to specific drug quantities that arguably were foreseeable to Pizarro. With respect to a firearm, paragraph 92 specifically cited testimony that Pizarro received a firearm through the mail in August 1993. Hence, the Second Amended PSR satisfied our order in Correy.
2. Drug Type
Pizarro argues that because the jury instructions on conspiracy did not include the type and quantity of drugs, the jury could have found him guilty only of conspiracy to distribute heroin, possibly producing a lower base offense level under the Guidelines. We disagree. The superseding indictment charged that the conspiracy involved ‘.‘approximately one thousand four hundred grams of heroin ... and approximately nine thousand four hundred forty five (9,445) kilograms of cocaine.” (Emphasis added.) “Because those drug quantities and types were joined by the conjunctive term ‘and’ rather than the disjunctive ‘or,’ there was no ambiguity about the crime charged.” Soto-Beníquez, 356 F.3d at 48-49. Further, the *302 district court instructed the jury numerous times that the charged conspiracy involved heroin “and” cocaine, including when summarizing the conspiracy charge, when reading the indictment, and when describing the proof of the conspiracy itself and the element of intent that would be necessary for a guilty verdict.'
3. Other Sentencing Arguments
Pizarro makes a host of other sentencing arguments, including that the sentencing court “was not familiar with the entire ' record,” improperly considered 18 U.S.C. § 3553 factors, and should have granted certain downward departures and variances. Since we are already vacating Pizarro’s sentence and ordering resentencing, we need not reach Pizarro’s alternate claims. See Correy, 570 F.3d at 401 (citing United States v. Vidal-Reyes, 562 F.3d 43, 48 (1st Cir.2009)).
IV.
In conclusion, we hold that the district court committed instructional Alleyne errors by failing to charge the jury on the essential element of individualized drug quantity for the conspiracy count and the essential element of drug quantity for the possession count before applying the § 841(b)(1)(A) statutory sentencing range that included a mandatory minimum sentence on each count. Nevertheless, because we conclude beyond a reasonable doubt that the errors did not contribute to the results obtained, we find the errors harmless.
However, since the district court ignored our order to conduct credibility assessments when calculating individualized drug quantity, and to consider Pizarro’s firearm enhancement arguments, we vacate Pizarro’s sentence and remand for resentencing. When resentencing Pizarro under § 841(b)(1)(A), the district court must (1) conduct credibility determinations, based on the whole record, for all witnesses on whose testimony it has relied in calculating an individualized drug quantity; (2) consider Pizarro’s arguments regarding a firearm enhancement; and (3) consider, as usual, any additional sentencing arguments that Pizarro has not waived and that we have not already resolved and “such new arguments or new facts as are made newly relevant by [our] decision — whether by the reasoning or by the result.” United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir.1999) (internal quotation mark omitted).
Pizarro was'arrested in 1996 and tried in 1999. Hence, as we consider this third direct appeal, he has been in custody for nearly two decades without a resolution of his case. Pizarro has already been sentenced three times, and we are now remanding for a fourth sentencing proceeding. The district court arrived at the last concurrent sentence of 23 1/3 years of imprisonment and five years of supervised release after calculating individualized drug quantity and applying a firearm enhancement, without weighing Pizarro’s potentially mitigating credibility arguments. Our vacatur and remand are for the purpose of correcting the district court’s failure to evaluate those arguments, and we therefore see no justification for the court to impose a longer sentence on remand than it deemed appropriate without considering credibility. We conclude that it is just under these circumstances to direct the district court, after considering Pizarro’s arguments, to impose a sentence no longer than the concurrent sentence of 23 1/3 years of imprisonment and five years of supervised release. See 28 U.S.C. § 2106. We intimate no view on whether the sentence should be lower.
We therefore affirm Pizarro’s convictions, vacate his sentence, and remand for resentencing consistent with this opinion.

So ordered.

. In response to a backlog of cases on the trial judge’s docket, the case was randomly reassigned to another district judge so that sentencing could be expedited. See United States v. Casas, 425 F.3d 23, 54-55 (1st Cir.2005).

. Section 841(b)(1)(B) provides for a five-year mandatory minimum and a forty-year statute *288 ry maximum sentence for specified drug quantities less than those listed in subsection (A).

. We held that Booker error existed insofar as the sentencing had occurred under a mandatory Guidelines system. Given that the government conceded that it could not prove harmless error, i.e., it could not "show beyond a reasonable doubt that a lower sentence would not be imposed under the post-Booker regime,” we vacated Pizarro’s sentence and remanded for resentencing. Casas, 425 F.3d at 59-60.

. Pursuant to Federal Rule of Criminal Procedure 32(c), the probation officer generally must conduct a presentence investigation and submit a report to the court before it imposes a sentence. Rule 32(e) provides that the Probation Office must provide the PSR to the defendant, the defendant’s attorney, and an attorney for the government at least thirty-five days before the sentencing, and Rule 32(f) provides the procedures for the parties' objections to the PSR. The sentencing court then examines the PSR and the objections to the PSR when deciding the proper sentence and considering the requisite factors for that sentence, such as the credibility determinations here.

. During oral argument, we instructed the government and Pizarro to file supplemental briefs on the Alleyne issue.

. As the government itself- implicitly recognizes, Pizarro could not have cited Alleyne as authority in his opening brief because it was filed before Alleyne was decided.

. Like the aggravating element of drug quantity, "death results” is a distinct aggravating element in § 841(b)(1).

. Casas itself recognized this principle: "In the absence of such an individualized finding, the drug quantity attributable to the conspiracy as a whole cannot automatically be shifted to the defendant.” Casas, 425 F.3d at 57-58 (quoting Colón-Solís, 354 F.3d at 103).

.In United States v. Paladin, 748 F.3d 438 (1st Cir.2014), the defendant also made the argument that, after Alleyne, Colón-Solís required the jury to find an individualized drug quantity triggering a mandatory minimum, but it was unnecessary for us to decide the issue in that case. See id. at 452-53 ("Paladin urges a collective reading of Colón-Solís and Alleyne to require that the jury make an individualized finding as to the quantity of drugs attributable to a particular defendant.”).

. Pizarro’s trial occurred years before the Supreme Court decided Alleyne; hence, there was no precedent at the time requiring the jury to make the individualized drug quantity finding on the conspiracy count.

. Again, this instruction reflected the state of the law at that time.

. On the other hand, where the mandatory minimum and statutory maximum do not depend on drug quantity, the court, without any jury finding, may make its own drug quantity findings for .sentencing purposes. For example, during sentencing for a conviction under § 841(b)(1)(C), where the indictment had not specified the quantity of cocaine or heroin or only charged small amounts, a district court may make an individualized drug quantity finding for a conspiracy charge (and a drug quantity finding for a possession charge) by a preponderance of the evidence to determine the advisory Guidelines sentence. See Ramírez-Negrón, 751 F.3d at 4849 (recognizing that the district court may make drug quantity findings by a preponderance of the evidence to calculate an advisory Guidelines sentence for a § 841(b)(1)(C) offense). After calculating that advisory Guidelines sentence, the district court must then use its discretion to impose a sentence within the statutory sentencing range mandated by the jury’s verdict. If, for a conviction under § 841(b)(1)(C), the court determines that the advisory Guidelines sentence is greater than twenty years, § 841(b)(l)(C)’s statutory twenty-year maximum nevertheless caps any sentence that the district court can give.

. In the case of a cocaine conspiracy, if the jury makes the required threshold findings of at least five kilograms, but does not indicate a specific quantity, and the district court chooses to sentence above the mandatory minimum, the court must make an individualized drug quantity finding by a preponderance of the evidence. The court would have to find the specific quantity of cocaine foreseeable to the defendant to determine the recommended sentence under the Sentencing Guidelines. See Colón-Solís, 354 F.3d at 103. That fact-finding may require credibility assessments for any witnesses on whose testimony the court relies. See Correy, 570 F.3d at 380-81. In its discretion, the court will then impose a sentence within the statutory range.

. As with a conspiracy conviction, if the jury makes the required threshold finding of at least five kilograms for a cocaine possession count, but does not indicate a specific quantity, and the district court chooses to sentence above the mandatory minimum, it must make a drug quantity finding by a preponderance of the evidence to determine the recommended sentence under the Guidelines. The court will then use its discretion to impose a sentence within the statutory range.

. The Supreme Court characterized the Apprendi error in Recuenco as Blakely error. Recuenco, 548 U.S. at 216, 126 S.Ct. 2546. As the Court explained, "In Blakely [v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ], we clarified that 'the "statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.’ ” Recuenco, 548 U.S. at 216, 126 S.Ct. 2546 (quoting Blakely, 542 U.S. at 303, 124 S.Ct. 2531).

. The element that increased the statutory maximum in Recuenco is more properly termed an "aggravating element” than a “sentencing factor.” The Supreme Court explained in Apprendi that the term “sentencing factor” “appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense.” Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348. Hence, we refer to a factor that increases the statutory maximum or minimum as an "aggravating element,” as opposed to a "sentencing factor.”

. The writing judge believes that, because each subsection of § 841(b)(1) defines a separate crime, Burrage, 134 S.Ct. at 887 & n. 3, a court may not solve a non-harmless (or plain) Alleyne instructional error by taking a mandatory minimum (or the absence of one) from one subsection and a statutory maximum from another. In other words, if the court had found the Alleyne error here non-harmless, the writing judge believes the new sentencing range could not have been zero years to life imprisonment — i.e., taking the absence of a mandatory minimum from § 841(b)(1)(C) and the statutory maximum of life imprisonment from § 841(b)(1)(A). He concludes that, under the logic of Burrage, such an approach would amount to legislating a wholly new crime and, hence, a non-harmless (or plain error) failure to instruct on the drug quantity elements would require vacating the conspiracy and possession convictions under § 841(b)(1)(A) carrying the mandatory mini-ma.

. At least one member of the panel disagrees with our reasoning in Pérez-Ruiz, Nelson-Rodriguez, and their progeny holding that a defendant preserves an Apprendi claim by objecting at sentencing. Under this view, PérezRuiz et al. cannot survive the Supreme Court’s recognition that drug quantity — or any sentencing factor — is an element of the charged offense. The rationale is that, when the indictment charges an enhanced offense, a defendant can hardly stand by silently (and then later invoke harmless error review) when the instructions fail to include appropriate mention of drug quantity any more than the defendant could withhold objection to the omission of any other element (such as mens rea in a murder case that enhances the base level offense). Adopting that view would require our court to revisit our precedents holding otherwise. In any event, as Pizarro’s conviction survives both plain-error and harmless-error review, our result does not depend on whether Pizarro preserved an objection to the Alleyne error.

. Even though Alleyne had not been decided yet, if there had been no objection below, an Alleyne claim would have been reviewed for plain error. See United States v. Harakaly, 734 F.3d 88, 94 (1st Cir.2013).

. We do not mean to suggest that a credibility argument, explaining how a finding of less than five kilograms was possible, could not have "contested” the omitted elements, as the term is used in Neder.

. In addition to his Alleyne arguments, Pizarro claims that his “statutory and constitutional rights to a speedy trial and sentencing were denied as a result of the commencement of trial 41 months after [his] indictment and the further delay of sentencing until years after.” As the government properly points out, Pizarro has not developed this argument beyond this one sentence; therefore, the argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”). Furthermore, as to pretrial delay, we have already held that there was no Speedy Trial Act or Sixth Amendment violation. See Casas, 425 F.3d at 30-36.

. This next resentencing will be Pizarro’s fourth sentencing. As explained above, Pizarro was initially sentenced in 2002 to life imprisonment. After his first appeal, Pizarro was resentenced in 2006 to 30 years in prison. After his second appeal, Pizarro was resentenced in 2012 to 23 1/3 years in prison.