# United States Court of Appeals
## For the First Circuit

No. 12-1257

UNITED STATES OF AMERICA,

Appellee,

v.

JAYSON ANTHONY McIVERY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

William W. Fick, Assistant Federal Public Defender, with whom
Federal Public Defender Office was on brief, for appellant.
Dina Michael Chaitowitz, Assistant United States Attorney,
with whom Carmen M. Ortiz, United States Attorney, was on brief,
for appellee.

November 20, 2015

**SELYA**, **Circuit Judge**.  This is a case caught in a time warp.  The government indicted the defendant under a legal regime that was modified by the subsequent passage of the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372, and the adoption of its implementing sentencing guidelines.  The district court accepted the defendant's guilty plea and — relying on its authority under Harris v. United States, 536 U.S. 545 (2002), to find the drug quantities needed to calibrate the sentencing scales — proceeded to sentence the defendant.

While this case was pending on appeal, the matter grew more complicated: the Supreme Court overruled Harris.  See Alleyne v. United States, 133 S. Ct. 2151 (2013).  Buoyed by this sea change in sentencing law, the defendant argues, among other things, that the district court erred in imposing a mandatory minimum sentence and that its error is both structural and non-harmless.

Although the legal landscape is pitted, we can see a clear decisional path.  We follow that path and, after careful consideration, we reject the defendant's asseverational array.  Accordingly, we affirm.

## I.  BACKGROUND

We start by delineating the anatomy and travel of the case.  In October of 2009, a federal grand jury sitting in the

District of Massachusetts indicted defendant-appellant Jayson Anthony McIvery on one count of conspiracy to possess cocaine base (crack cocaine) with intent to distribute (count one) and two specific-offense counts of possession of crack cocaine with intent to distribute (counts two and three). See 21 U.S.C. §§ 841(a)(1), 846. These charges stemmed from two sales of crack cocaine to a cooperating individual. The first sale, charged in count two, took place on May 11, 2009, and involved 13.7 grams of crack cocaine; the second sale, charged in count three, took place on August 8, 2009, and involved 42.5 grams of crack cocaine.

The indictment did not specify the precise drug amounts involved, instead stating that each of the three counts "involved five grams or more of a mixture and substance" containing cocaine base. Under then-prevailing law, five grams was all that was needed to trigger a five-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(iii).

In August of 2011, the government filed an information in accordance with 21 U.S.C. § 851(a)(1) indicating that it planned to seek a sentencing enhancement premised on the defendant's two prior drug-trafficking convictions. This proposed enhancement, coupled with the drug quantities charged, exposed the defendant to a mandatory minimum sentence of ten years. See id. § 841(b)(1)(B).

The defendant originally maintained his innocence but, on September 29, 2011, pled guilty to all three counts. In the period between the indictment and the plea, Congress enacted the FSA, which elevated the quantity of crack cocaine required to impose a five-year mandatory minimum sentence to twenty-eight grams. See United States v. Douglas, 644 F.3d 39, 40-41 (1st Cir. 2011). Revised sentencing guidelines implementing the FSA went into effect on November 1, 2010. See id. at 41.

At the change-of-plea hearing, the government made pellucid that counts one and three carried a ten-year mandatory minimum sentence (a statement that reflected the statutory mandatory minimum, doubled because of the section 851(a)(1) information).[1] During the plea colloquy, the district court did not discuss with the defendant the exact amount of drugs sold on each occasion, though the government did specify the quantities involved in each of the two transactions.

Prior to sentencing, the defendant challenged the applicability of the statutory mandatory minimum, arguing that

---

[1] For aught that appears, count two did not trigger any mandatory minimum sentence as the quantity of crack cocaine involved in that sale was less than twenty-eight grams. In this court, however, the parties treat the three counts as a unit, and we follow their lead.

attributing twenty-eight grams or more of crack cocaine to him would entail the use of a fact not charged in the indictment. In other words, the defendant contended that because the indictment had not charged him with intent to distribute twenty-eight grams or more, no foundation existed for a mandatory minimum sentence. Nevertheless, his objection straightforwardly acknowledged that this argument was foreclosed by Harris, which had held that a fact not charged in an indictment still could trigger a mandatory minimum sentence. See 536 U.S. at 568. The defendant preserved his claim that Harris had been wrongly decided.

The district court convened the disposition hearing on February 10, 2012. The court did not explicitly address drug quantity before invoking the statutory mandatory minimum and sentencing the defendant to concurrent ten-year terms of immurement. It is clear from the context, however, that the court held the defendant accountable for more than twenty-eight grams of crack cocaine.

The defendant appealed. During the course of briefing, the Supreme Court granted certiorari in Alleyne, and we stayed the appeal in this case.

When deciding Alleyne, the Supreme Court revisited its decision in Harris and concluded that the decision was inconsistent

with the principles enunciated in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), which had held that any fact increasing a statutory maximum sentence (other than a prior conviction) must be charged in the indictment and found by a jury. See Alleyne, 133 S. Ct. at 2155. The Court proceeded to overrule Harris, declaring that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Id.

At that point, we lifted the stay in this case and ordered supplemental briefing in light of Alleyne. In that round of briefing, the defendant advanced several claims of error. We consider those claims below.

## II. ANALYSIS

There is no question that an Alleyne error occurred here. The drug quantity necessary to ground the mandatory minimum under the FSA was not specified in the indictment. The only relevant question, therefore, is how to address this conceded error.

The defendant principally asserts that the Alleyne error requires vacation of his sentence because it is not subject to harmless error review. That assertion trips over this court's precedent. In United States v. Harakaly, 734 F.3d 88 (1st Cir. 2013), cert. denied, 134 S. Ct. 1530 (2014), the sentencing court

made a factual finding, pre-Alleyne, that the defendant had possessed a sufficient quantity of methamphetamine to necessitate a ten-year mandatory minimum sentence. See id. at 92-93. The court made this finding despite the fact that no drug quantity had been alleged in the indictment. See id. at 90.

On appeal, we took note that Alleyne had extended the principles of Apprendi to the context of mandatory minimums and looked to the standards of review applied to Apprendi errors to determine the appropriate form of scrutiny for Alleyne errors. See id. at 94-95. We concluded that harmless error review was appropriate with respect to preserved claims of Alleyne error. See id. at 95; see also United States v. Pérez-Ruiz, 353 F.3d 1, 14, 17 (1st Cir. 2003) (applying harmless error review to a preserved Apprendi challenge).

The defendant concedes — as he must — that harmless error review is available if Harakaly controls. See United States v. Rodríguez-Vélez, 597 F.3d 32, 46 (1st Cir. 2010) (explaining that, with only narrow exceptions, in-circuit panels are bound by prior panel decisions closely on point); United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (same). But the defendant labors to distinguish Harakaly and, relatedly, strives to convince us that his case should instead be governed by our decision in United

States v. Zavala-Martí, 715 F.3d 44 (1st Cir. 2013).  We are not persuaded.

To begin, the defendant's attempt to distinguish Harakaly is impuissant.  He presses the fact that in Harakaly — unlike this case — the indictment did not state a specific drug quantity.  This is a distinction without a difference: the Harakaly court's rationale for harmless error review did not turn in any way on the presence or absence in the indictment of an allegation of a specific quantity of drugs.  As the court made clear, a challenge to the indictment's failure to invoke the necessary drug quantities "establishes only that there was Alleyne error; it says nothing about whether that error was harmless." 734 F.3d at 95-96.  The harmlessness of the error was instead determined by reference to the overwhelming — indeed, unchallenged — evidence that the defendant was responsible for a drug quantity sufficient to require the imposition of a mandatory minimum sentence.[2]  See id. at 96.

_____

[2] In point of fact, the defendant here is arguably in a better position than the defendant in Harakaly.  The indictment in this case put him on notice of a specific drug quantity calibrated to the mandatory minimum.  In contrast, the indictment in Harakaly left the defendant to infer the applicability of the mandatory minimum from the facts of the charged conduct.

Nor does Zavala-Martí assist the defendant's cause. There, the court sentenced the defendant to life in prison even though none of the charges of conviction authorized such a draconian sentence. See 715 F.3d at 52. Applying plain error review, we vacated the sentence and remanded for resentencing. See id. at 52-54. The case simply did not involve the application of the drug-quantity revisions contained in the FSA. Although the defendant was indicted for conspiring to distribute fifty grams or more of crack cocaine, id. at 51, the district court "explicitly disclaimed reliance on any amount of crack cocaine in imposing sentence," id. at 52. And although we noted that the indictment alleged "a drug quantity and thereby set specific, statutorily prescribed limits on the sentence," id. at 53, we pointed out that datum only to emphasize that the error resulted from the district court's departure from the terms of the indictment (which was designed to set a range of appropriate sentences). "[T]here was no flaw in the indictment resulting from a subsequent change in the law" but, rather, an error rooted in "disregarding . . . the grand jury's judgment." Id.

We conclude that, rather than being controlled by Zavala-Martí, the case at hand is more akin to the situation that Zavala-Martí distinguished. The indictment here charged a drug

quantity — "five grams or more" — that was sufficient to kindle a statutory mandatory minimum under existing law. A subsequent change in the law altered the needed quantity; and a further alteration in the legal regime — the Alleyne decision — called into question the district court's imposition of a mandatory minimum predicated on the new twenty-eight gram threshold. That was error, but the error flowed entirely from the subsequent change in law, in the same fashion as the error reviewed in Harakaly. Unlike Zavala-Martí, this case presents no concern about undermining the role of the grand jury in setting the range of applicable punishments: applying the mandatory minimum here respects the grand jury's will as expressed in the indictment.

In an effort to snatch victory from the jaws of defeat, the defendant suggests that Alleyne errors are structural and, thus, not amenable to harmless error review. See, e.g., Neder v. United States, 527 U.S. 1, 8 (1999). This suggestion is futile. Harakaly unambiguously holds that Alleyne errors are not structural, see 734 F.3d at 94-95; see also United States v. Morris, 784 F.3d 870, 874 n.3 (1st Cir. 2015), petition for cert. filed, 84 U.S.L.W. 3087 (U.S. Aug. 7, 2015) (No. 15-170), and we are bound to respect that holding.

Consistent with Harakaly, the appropriate standard of review is for harmless error. Where, as here, the relevant error is of constitutional dimension and has been preserved below, the harmless error standard requires the government to "prove that the error was harmless beyond a reasonable doubt, or, put another way, that it can fairly be said beyond any reasonable doubt that the assigned error did not contribute to the result of which the appellant complains." Pérez-Ruiz, 353 F.3d at 17.

In reviewing Alleyne errors under this standard, "'overwhelming evidence of the requisite drug types and quantities' generally serves as a proxy for determining whether the Alleyne error contributed to the result." Morris, 784 F.3d at 874 (quoting Harakaly, 734 F.3d at 95) (collecting cases). "Overwhelming evidence" consists of "a corpus of evidence such that no reasonable jury could find, based on the record, that the crack quantity was less than that required for the mandatory minimum to apply." Id.

In this case, the government clears this hurdle with room to spare. The district court accurately described the evidence of the defendant's guilt as "overwhelming," and the evidence that the offense conduct involved twenty-eight grams or more of crack cocaine is uncontested. Indeed, at the change-of-

plea hearing, the defendant admitted that he had engaged in the charged transactions — and the second sale alone involved 42.5 grams. So, too, the presentence investigation report determined, without objection, that the offenses of conviction involved a total of 56.2 grams of crack cocaine. On this record, a reasonable jury could not have found that the defendant was responsible for less than the requisite drug quantity. See Harakaly, 734 F.3d at 96.

To say more about the harmlessness of the error would be to paint the lily. In the circumstances of this case, we are confident that the Alleyne error was harmless beyond a reasonable doubt.[3]

Next, the defendant submits that his sentence resulted from a constructive amendment to the indictment. We do not agree.

Unlike the defendant's principal claims of Alleyne error, his constructive amendment claim was not raised below and was therefore forfeited. See Puckett v. United States, 556 U.S. 129, 134 (2009). Forfeited errors are normally reviewed only for plain error, see id. at 135, and forfeited constructive amendment

---

[3] We acknowledge that the retrospective application of Alleyne to pending cases has not been uniform across the circuits. See, e.g., United States v. Lewis, 802 F.3d 449, 454-56 (3d Cir. 2015) (en banc). In the last analysis, however, we remain bound by our own precedent — and our determination in this case is faithful to that precedent.

claims are no exception, see United States v. Brandao, 539 F.3d 44, 57 (1st Cir. 2008). Although the defendant asserts that the constructive amendment claim flows from the decision in Alleyne and therefore is not forfeited, he cannot avoid plain error review on that basis. Even when the law changes between the time of a lower court ruling and the time a subsequent appeal is heard, objections not interposed before the lower court are deemed forfeited and are reviewed for plain error. See Johnson v. United States, 520 U.S. 461, 466-70 (1997); United States v. Barone, 114 F.3d 1284, 1294 (1st Cir. 1997).

Review for plain error is not appellant-friendly. Such review "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The defendant's attempt to satisfy this daunting standard falters at the first and second steps (which we consider together).[4]

---

[4] We think it likely that the defendant's attempt fails at every step of the analysis. But because an appellant bears the burden of satisfying all four facets of the plain error inquiry, see United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir.

- 13 -

As we have stated, "[a] constructive amendment occurs when the charging terms of an indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them." Brandao, 539 F.3d at 57 (quoting United States v. Pierre, 484 F.3d 75, 81 (1st Cir. 2007)). This construct is designed "to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him." Id.

Constructive amendments typically arise from a mismatch between the indictment's description of the charged offense and some other variable. That variable may be the evidence offered in support of the charge, see, e.g., United States v. Muñoz-Franco, 487 F.3d 25, 64 (1st Cir. 2007); a jury instruction, see, e.g., United States v. Vizcarrondo-Casanova, 763 F.3d 89, 98-99 (1st Cir.), cert. denied, 135 S. Ct. 307 (2014); Brandao, 539 F.3d at 56-57; or the sentence imposed, see, e.g., United States v. Iacaboni, 363 F.3d 1, 7 (1st Cir. 2004).

_____

2005), it would serve no useful purpose here to go beyond the first two facets.

- 14 -

The defendant says that the critical gap in this instance is the lack of fit between the indictment and the sentence. But as our prior discussion demonstrates, there was no impermissible change in the theory of the case remotely resembling the constructive amendments that we identified in other cases. See, e.g., Vizcarrondo-Casanova, 763 F.3d at 99; Brandao, 539 F.3d at 56-57; Iacaboni, 363 F.3d at 7. Here, an identical theory of the case persisted from the indictment phase through the sentencing phase. The asserted inconsistency between the indictment and sentence resulted from intervening actions of Congress and the Supreme Court: any lack of fit between the indictment and the sentence is due to a change in the law, which modified the threshold amount of drugs needed to trigger the statutory mandatory minimums.

The short of it is that the grand jury handed up an indictment that specified a drug quantity calculated to invoke the mandatory minimum under existing law. Thus, the defendant was on ample notice from the very beginning of both the government's assertion that the statutory mandatory minimum applied and his potential exposure to that mandatory minimum. Here, moreover, the indictment invoked a drug quantity that was sufficient under then-prevailing law to trigger a mandatory minimum sentence. This

- 15 -

awareness is of critical importance because "[a] primary objective of the rule against constructive amendment of indictments is to ensure defendants have notice of the charges they must defend against." United States v. Dubón-Otero, 292 F.3d 1, 5 (1st Cir. 2002). And in all events, the quantity of drugs for which the defendant was sentenced was entirely consistent with the indictment's description of the charged conduct as involving "five grams or more" of crack cocaine (emphasis supplied).

The bottom line is that, in the circumstances of this case, any constructive amendment claim is dubious at best. Surely, then, there is no plain error.[5]

This brings us to the defendant's final claim of error: his plaint that the government's failure to include his prior state

---

[5] This case is distinguishable from United States v. Hackett, 762 F.3d 493, 501-02 (6th Cir. 2014), cert. denied, 135 S. Ct. 1518 (2015), in which a panel of the Sixth Circuit concluded that an Alleyne error constituted a constructive amendment. There, the defendant was charged with using or carrying a firearm "during and in relation to" a "crime of violence." Id. at 501 (quoting 18 U.S.C. § 924(c)(1)(A)). Although the defendant was found guilty of that offense, he was sentenced under a subsection of the statute — 18 U.S.C. § 924(c)(1)(A)(iii) — which applies only "if the firearm is discharged" during the commission of the offense. Id. The defendant argued that the district court's decision to sentence him under the "discharge" subsection was an improper deviation from the terms of the indictment, and the court agreed. Id. at 502. Here, unlike in Hackett, there is no mismatch between the charged conduct and the sentenced conduct.

convictions in the indictment was reversible error.  This plaint runs headlong into the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held that prior convictions that aggravate a sentence are not elements of a crime that must be charged in the indictment and proved to a jury.  See id. at 228-35, 239.

To be sure, the defendant construes Alleyne as eroding the theoretical underpinnings of Almendarez-Torres.  But the Alleyne Court took pains to disclaim any intention of revisiting Almendarez-Torres, see Alleyne, 133 S. Ct. at 2160 n.1, and Almendarez-Torres remains binding Supreme Court precedent.  Unless and until the Supreme Court overrules that decision, we must continue to adhere to it.  See United States v. Jiménez-Banegas, 790 F.3d 253, 258 (1st Cir. 2015) (noting, post-Alleyne, that the Supreme Court "has never . . . disavowed" Almendarez-Torres); United States v. Rodriguez, 759 F.3d 113, 122 (1st Cir.) (same), cert. denied, 135 S. Ct. 421 (2014); United States v. Carrigan, 724 F.3d 39, 51 n.4 (1st Cir.) (same), cert. denied, 134 S. Ct. 668 (2013); see also Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals

should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

### III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed.**