# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 14-60747

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2016

Lyle W. Cayce
Clerk

————

Cons. w/ 14-60751

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

KEITH ANTHONY KIEL, also known as Thug; RANDY LAVERNE
MARSHALL, also known as Boss, also known as Boss Hog,

      Defendants - Appellants

-------------------------------------------------------------------------------------------------------------

Cons. w/ 14-60748

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

KEITH ANTHONY KIEL, also known as Thug,

      Defendant - Appellant

————

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CR-1

————

Before KING, JOLLY, and ELROD, Circuit Judges.

No. 14-60747

PER CURIAM:*

Keith Kiel and Randy Marshall were convicted for multiple crimes connected to a series of bank robberies in Mississippi, Alabama, and Florida between 2008 and 2013. On appeal, both defendants contend that the district court erred by excusing a juror during trial. In addition, Marshall alleges several evidentiary errors, and asserts a host of arguments regarding his sentence. Finally, both Kiel and Marshall argue their trial lawyers were ineffective. We find no reversible error, and accordingly affirm the district court's judgment.

I.

From May 2008 through May 2013, Keith Kiel and Randy Marshall allegedly committed a series of bank robberies in Mississippi, Alabama, and Florida. The first set of robberies occurred in 2008. On the morning of May 13, 2008, two men entered the First Federal Savings and Loan ("First Federal") in Gautier, Mississippi, wearing masks and gloves and carrying firearms. While one robber vaulted the bank teller counter, the other robber secured the offices and other rooms. During the robbery, one of the robbers also held his firearm to the head of a bank employee, directing the employee to fill a backpack with cash. The robbers ultimately fled with approximately $61,000 in a stolen vehicle. On the morning of June 19, 2008, two masked gunmen committed a similar robbery at Regions Bank in Biloxi, Mississippi. Again, the defendants fled in a stolen car. Marshall's nephew, Reginald Robinson, drove a second getaway car, which the defendants entered after abandoning the first

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

stolen car soon after leaving the bank. Robinson later served as a cooperating witness at the appellants' trial.

The second set of bank robberies occurred beginning in late 2012.[1]  On the morning of December 13, 2012, two masked, gloved men carrying firearms robbed the Merchants & Marine Bank ("M&M Bank") in Moss Point, Mississippi.  Similar to the 2008 robberies, one of the robbers went behind the teller counter to collect money from the cash drawers, while the other robber cleared offices within the bank.  The robber securing the offices pointed his firearm toward at least one bank employee and directed the employee to leave the office and "get on the floor" in the main lobby.  The robbers fled with approximately $22,000 in a stolen vehicle.  Two masked, gloved men carrying firearms committed similar robberies at four other locations: the Wells Fargo Bank in Pensacola, Florida; the Hancock Bank in Gulfport, Mississippi; the Bancorp South Bank in Greenville, Alabama; and the Hancock Bank in Moss Point, Mississippi.  Lamarcus Moore, an associate of the defendants who pled guilty to conspiracy to commit bank robbery, served as a cooperating witness against Kiel and Marshall.  Moore later testified that Marshall recruited him to help with these robberies by driving a second getaway vehicle used by the robbers after abandoning the stolen vehicle.

Marshall and Kiel were ultimately indicted on multiple charges for their alleged involvement in these bank robberies.  The defendants were charged with two counts of conspiracy, in violation of 18 U.S.C. § 371, with the objects of each conspiracy listed as follows: (1) bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); (2) brandishing a firearm during a violent felony, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) interstate transportation of stolen

---

[1] Approximately one month after the Regions Bank robbery, Marshall was arrested during a routine traffic stop on several unrelated, outstanding warrants.  Following his arrest, Marshall remained in custody from July 20, 2008, through May 4, 2012.

No. 14-60747

vehicles, in violation of 18 U.S.C. § 2312.  The government included two of the bank robberies as overt acts furthering one of the conspiracies and the other five robberies as overt acts furthering the other conspiracy.  The defendants were also charged with separate counts of bank robbery, brandishing a firearm during a violent felony, and interstate transportation of stolen vehicles relating to five of the seven robberies.

The trial in this matter began on June 30, 2014.  On the morning of Monday, July 7th, the district court informed the parties that a juror had been excused for health reasons.  The district court judge, while speaking with the juror over the phone, learned that the juror's pre-existing condition of hypertension had worsened over the weekend, and that he had been given new medication and told to rest by his physician.  An alternate juror that had already been impaneled replaced him, and trial continued without delay.

The trial ended on July 14, 2014.  The jury found Marshall guilty on all counts and found Kiel guilty on all but one count.  The district court ultimately imposed a total sentence of 1,704 months, or 142 years, with respect to Marshall and a total sentence of 804 months, or 67 years, with respect to Kiel. The defendants filed a timely appeal.

## II.

We begin by addressing the defendants' shared argument that the district court erred in excusing a juror outside the presence of the defendants. As stated, roughly halfway through the trial, a juror informed the district court that a pre-existing medical condition had worsened and, at the advice of his physician, he needed to rest for "at least a few days."  In addition, when the district court inquired further about the effect the juror's condition had on his ability to serve as a juror, the juror definitively stated that his poor health rendered him unable to continue as a juror.  Thus, the district court excused the juror.  When the district court informed the parties that the juror had been

4

excused, the defendants did not formally object. The defendants did, however, request that the record reflect their "great concern" that the court had excused the only African-American juror.

This court reviews a district court's decision to dismiss a juror for abuse of discretion.[2] *United States v. Pruett*, 681 F.3d 232, 247 (5th Cir. 2012). Harmless error review applies when the district court communicates with, and later excuses, a juror outside the presence of the defendants. *See United States v. Grubbs*, 776 F.2d 1281, 1290 (5th Cir. 1985). "A district court's decision to remove a juror is discretionary 'whenever the judge becomes convinced that the juror's abilities to perform his duties [has] become[] impaired.'" *United States v. Virgen-Moreno*, 265 F.3d 276, 288 (5th Cir. 2001) (quoting *United States v. Leahy*, 82 F.3d 624, 628 (5th Cir. 1996)). "Unless the court's removal of the juror has prejudiced the defendant, [this circuit] will not disturb the court's decision." *Id.* "Such prejudice is found 'if the juror was discharged without factual support or for a legally irrelevant reason.'" *Pruett*, 681 F.3d at 247 (quoting *Virgen-Moreno*, 265 F.3d at 288).

We conclude that the district court did not abuse its discretion in dismissing the juror. It is undisputed that the district court's decision to excuse the juror had factual support; the defendants acknowledge that they have no reason to believe that the excused juror was feigning his medical condition, or otherwise exaggerating its effect on his ability to continue serving as a juror. This court has, on numerous occasions, affirmed the dismissal of a juror because a health condition renders the juror unable to continue service. *See, e.g., United States v. Huntress*, 956 F.2d 1309, 1312–13 (5th Cir. 1992)

---

[2] The government urges that we should review the district court's decision under the plain error doctrine, since the defendants' statement that they had "great concern" about the juror's excusal was insufficient to preserve the issue on appeal. For the reasons that follow, however, the district court committed no reversible error under either standard of review.

(dismissing a juror from deliberations after the juror began to experience mental illness).

The defendants, however, contend that, even if the district court had a sufficient factual basis for dismissing the juror, the court abused its discretion in not notifying the defendants prior to the juror's dismissal. They urge that Federal Rule of Criminal Procedure 43(a) requires that "the defendant must be present at . . . every trial stage, including jury impanelment and the return of the verdict." Fed. R. Crim. P. 43(a)(2). Relying on this presence requirement, the defendants contend that they should have been given an opportunity to establish that a short continuance would allow the juror to recover from his health problems, and thus continue serving as a juror.

These arguments lack merit. A district court is not required to conduct an evidentiary hearing before dismissing a juror. *See Virgen-Moreno*, 265 F.3d at 288 (stating that a district court is "not required to conduct an evidentiary hearing, and the scope of the court's investigation is within its sound discretion"). Furthermore, to the extent that the district court may have violated Rule 43 in dismissing the juror outside the presence of the defendants, such an error is harmless. As stated, the defendants do not take issue with the district court's factual basis for dismissing the juror, and there is no indication that the district court purposefully excluded the defendants from conference when excusing the juror. *See Grubbs*, 776 F.2d at 1290 (holding that the district court's dismissal of a juror outside the presence of the defendant was harmless error because the defendant was only inadvertently excluded from conference with the juror); *see also Dumas*, 658 F.2d at 414 ("[T]he record indicates that it was by inadvertence, not design, that Dumas was not notified

6

No. 14-60747

or present at the conference when the excusal was granted, and the error was harmless beyond a reasonable doubt.").[3]

In sum, the district court had factual support for excusing the juror; any error in excusing him outside the presence of the defendants is rendered harmless by the fact that the defendants' absence was inadvertent and did not affect the district court's rationale for the excusal. Accordingly, the district court did not err in dismissing the juror.

## III.

Marshall alone also asserts that the district court committed multiple additional errors affecting both his conviction and sentence. We first consider Marshall's arguments with respect to the trial proceedings, before turning to the alleged sentencing errors.

## A.

With respect to the trial proceedings, Marshall contends that the district court erred in (1) allowing the government to impermissibly bolster the credibility of cooperating witnesses; (2) allowing several law enforcement officers to provide expert testimony on the bank robberies, despite that they were never qualified as experts; and (3) allowing improper hearsay evidence to be admitted. Marshall failed to object to these alleged errors at trial; thus, our

---

[3] We also note that, in both their briefing and at oral argument, the defendants emphasized that the excused juror was the only African-American on the jury. The defendants, however, do not contend that race played any part in the court's decision to excuse the juror. Nor do they allege that discriminatory reasoning infected the jury selection process. Instead, the defendants merely contend that the district court abused its discretion in not considering the effect the juror's dismissal would have on the racial composition of the impaneled jury. The defendants cite no law in support of the assertion that an otherwise valid dismissal of a juror may be rendered unlawful simply because he or she was the only minority juror. Moreover, we note that the juror was replaced by a previously selected alternate juror and "[t]here is no question that alternates may replace seated jurors when they become unable to serve." *United States v. Dominguez*, 615 F.2d 1093, 1095 (5th Cir. 1980).

review is for plain error. *United States v. Smith*, 814 F.3d 268, 273 (5th Cir. 2016). Marshall must demonstrate that (1) there was an error, (2) the error was plain or obvious, and (3) the error affected his substantial rights. *Id.* If the defendant meets that burden, this court has the discretion to remedy that error only if it "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* at 273–74 (citing *United States v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008)).

1.

First, Marshall argues that the Government impermissibly bolstered the testimony of two accomplice witnesses, Robinson and Moore. During the direct examination of both witnesses, the government questioned the witnesses regarding provisions in their plea agreements that conditioned any government advocacy for a lesser sentence on the coconspirators' truthful testimony. Moreover, on redirect, the government asked both Robinson and Moore whether they were aware of who ultimately held the authority to grant them a lesser sentence in exchange for their cooperating testimony. Both Robinson and Moore answered that, as stated in the plea agreements, the district court judge, and not the prosecution, was ultimately responsible for deciding whether they would receive a lesser sentence for cooperating in the prosecution of the defendants.

Marshall now contends that the government wrongfully juxtaposed the truthfulness provisions of Robinson's and Moore's plea agreements with the fact that the district court judge had final authority to determine those witnesses' sentences. Marshall urges that, as a result, the jury was left with the impression that the trial judge was monitoring the cooperating witnesses' testimony, and would have prevented any untruthful testimony.

When a defendant objects to allegedly improper statements made by a prosecutor, this court "must first decide whether the prosecutor made an

improper remark." *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013) (quoting *Gracia*, 522 F.3d at 600 n.2).   Attempting "to bolster a witness by vouching for his credibility ordinarily is improper and constitutes error." *United States v. Leslie*, 759 F.2d 366, 378 (5th Cir. 1985).   "While a prosecutor may argue inferences and conclusions drawn from the evidence, he 'may not make explicit personal assurances of a witness's veracity.'" *Smith*, 814 F.3d at 274 (quoting *Leslie*, 759 F.2d at 378).   The allegedly improper remarks are, however, to be viewed in the context "of the argument to which [the remarks] responded." *United States v. Canales*, 744 F.2d 413, 424 (5th Cir. 1984); *accord United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010).   "When the defense suggests that a witness will lie, the Government is entitled to show that the witness has no motive to lie." *United States v. Aguilar*, 645 F.3d 319, 323 (5th Cir. 2011).

Reviewing the record, it is apparent that the government's discussion of the plea agreements' various provisions was not undertaken merely to bolster Robinson's and Moore's credibility.   Instead, it was in response to assertions by the defense, made during opening statements, that the plea agreements gave Robinson and Moore incentive to lie, as they had to "impress" the government to receive leniency in sentencing. *See, e.g.*, Trial Transcript at 171 ("[Robinson and Moore] have reasons to make deceptive comments, to be untruthful, to be less than candid and honest . . . ."); *id.* at 176 (stating that Robinson and Moore "need a deal with the government to stand a chance of getting out of jail earlier").   The government was entitled to rebut the defense's repeated assertions that the plea agreements incentivized dishonest testimony on the part of the cooperating witnesses; the government did so by showing (1) that the plea agreements were contingent on truthful, and not necessarily inculpatory, testimony; and (2) that the district court judge, not the government, had the final authority to determine Robinson's and Moore's

sentences.   In addition, we note that, on cross-examination, the defense introduced the plea agreements into evidence.  Accordingly, the district court did not commit plain error in allowing the government to discuss the plea agreement provisions at issue.

2.

Marshall next contends that the district court committed plain error in allowing several law enforcement officers to testify based on their specialized experience with bank robberies.  During the trial, multiple law enforcement officers testified about observations they made when investigating the various bank robberies allegedly committed by the defendants.  For example, Michael Brown, a detective for the Biloxi Police Department, testified that the method in which these robberies were carried out—using guns, masks, and blatant threats of force—were markedly different from the other bank robberies he had investigated in his career, which tended not to involve overt threats of force. The natural inference of this testimony was that all the robberies at issue were committed by the same two individuals.  In addition, FBI agent John McDavid testified to various commonalities among the various robberies, including the attire worn by the robbers in the surveillance footage and the time of day the robberies took place.

Marshall urges that such testimony was actually "expert" testimony, and that the district court erred in admitting the testimony because the officers were never formally qualified as experts.  "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012) (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)).  In particular, "a lay opinion must be the product of reasoning processes familiar to the average

person in everyday life." *Yanez Sosa*, 513 F.3d at 200 (quoting *United States v. Garcia*, 413 F.3d 201, 2015 (2d Cir. 2005)). Accordingly, "'[t]o be considered expert, testimony must involve more than common sense or the officer's past experience formed from firsthand observation.'" *Ebron*, 683 F.3d at 138 (quoting *United States v. Jackson*, 549 F.3d 963, 975 (5th Cir. 2008) (internal quotation marks omitted)).

Here, the district court did not commit plain error in admitting the law enforcement officers' testimony as lay testimony. As stated, the majority of the disputed testimony related to the officers' comparing the similarities between the robberies. Marshall has failed to show how such comparisons involve something other than the "reasoning processes familiar to the average person in everyday life." *See Yanez Sosa*, 513 F.3d at 200. Accordingly, there was no need for the witnesses to be qualified as experts before giving such testimony. Furthermore, comparisons by John McDavid and Michael Brown of the *modus operandi* of the robberies at issue in the present matter and other robberies they had previously investigated in their law enforcement careers involve only the officers' common sense and their "past experience formed from firsthand observation." *See Ebron*, 683 F.3d at 138. In addition, we note that Marshall does not urge that there was insufficient foundational testimony to qualify the law enforcement officials as experts; instead, he confines his argument to the fact that the witnesses were never formally tendered as experts. Thus, the district court did not commit plain error in admitting the challenged testimony.

3.

Finally, Marshall argues that the district court erred in allowing improper hearsay evidence to be admitted. Specifically, Marshall points to the testimony of Jason Smith, an investigator with the Moss Point District Attorney's Office. Smith interviewed Melinda Sims, a friend of Marshall's, regarding Marshall's involvement in the bank robberies. At trial, Smith

testified that, when shown surveillance footage of the M&M bank robbery, Sims "fell back into her chair and put her hand over her mouth and started crying." Marshall contends that this testimony about Sims's reaction to the surveillance footage amounted to hearsay evidence asserting that Marshall was, in fact, the individual in the footage; he further contends that the testimony was offered in violation of the Sixth Amendment's Confrontation Clause. Again, our review is for plain error.

The district court did not plainly err in admitting the testimony regarding Sims's reaction to the surveillance video. Federal Rule of Evidence 801 defines hearsay as a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In this context, a "statement" means "a person's oral assertion, written assertion, or nonverbal conduct, *if the person intended it as an assertion*." Fed. R. Evid. 801(a) (emphasis added). An assertion "has the connotation of a positive declaration," *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990), such as a declarant pointing, *United States v. Caro*, 569 F.2d 411, 416 n.9 (5th Cir. 1978). Sims's reaction to the video—placing a hand to her mouth and crying—is not hearsay because it was not intended as an assertion. *See* 2 *McCormick on Evidence* § 250 (7th ed. 2013) (stating that "an uncontrollable action or reaction by its very nature precludes any intent to make an assertion"). In other words, although a jury might infer from Sims's visceral reaction that she knew the individual in the surveillance footage, it does not follow that she intended to identify the individual in the footage. Furthermore, Marshall has not provided any authority that such non-assertive actions constitute "testimony" and therefore invoke the protections of the Confrontation Clause. *See United States v. Duron–Caldera*, 737 F.3d 988, 992 (5th Cir. 2013) (noting that the Confrontation Clause bars the admission of

certain "testimonial statements," and that "testimony" is defined as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004))). Accordingly, the district court did not plainly err in admitting Smith's testimony.

## B.

Having considered Marshall's evidentiary arguments, we now turn to the alleged sentencing errors.  Marshall brings five separate arguments regarding his sentence.  We consider each argument in turn.

## 1.

First, Marshall contends that the district court erred when it sentenced him based on a seven-year mandatory minimum for "brandishing" a firearm in connection with the First Federal robbery.  Marshall did not object to the district court's imposition of the seven-year minimum. Thus, we again apply the plain error doctrine in our review, as it is described above.

A person violates 18 U.S.C. § 924 if the person "uses or carries a firearm" during a crime of violence, including bank robbery.  18 U.S.C. § 924(c)(1)(A).  If a person violates this statute, he or she is subject to a mandatory minimum sentence of five years, but the minimum is increased to seven years "if the firearm is brandished." 18 U.S.C. § 924(c)(1)(A)(ii).  Any fact that increases a mandatory minimum sentence must be found by a jury beyond a reasonable doubt. *Alleyne v. United States*, 133 S. Ct. 2151, 2159, 2163 (2013).  Marshall urges that the jury found him guilty only of "using or carrying a firearm," which results in a five-year mandatory minimum sentence.  He emphasizes that the verdict form did not include an option for the jurors to make a finding of brandishing, as it asked jurors to decide only whether Marshall "used or carried" a firearm during the bank robberies.

It appears that the district court committed a "clear or obvious" error in applying the seven-year mandatory minimum without a jury finding regarding whether Marshall "brandished" a firearm.  A finding of "brandishing" is the operative fact that increases the mandatory minimum sentence from five years to seven years.  Under *Alleyne*, 133 S. Ct. 2151, and its progeny, such a finding should have been made by the jury, not by the district court at sentencing.  Notwithstanding this error, however, we decline to exercise our discretion under the plain error doctrine.  We decline because the error in question does not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).

It is well established that this court may decline to correct a forfeited error when the evidence of a judicially found fact is overwhelming and uncontroverted.  *United States v. Cotton*, 535 U.S. 625, 632–33 (2002); *accord United States v. Kizer*, 554 F. App'x 311, 313 (5th Cir. 2014) (per curiam) (unpublished).  Here, there is significant unchallenged evidence that Marshall "brandished" a firearm.  Multiple eyewitnesses to the First Federal robbery stated that the robbers had pointed firearms at bank employees, including holding a firearm to at least one employee's head.  Such acts clearly constitute "brandishing" a firearm for purposes of the statute.  *See* 18 U.S.C. § 924(c)(4) (defining "brandish" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person").

In sum, there is considerable and undisputed evidence establishing that Marshall brandished a gun in commission of at least two of the robberies.  Although the district court erred in not allowing the jury to make a finding of "brandishing," the existence of this overwhelming evidence causes the district court's mistake not to rise to such a level that it affects the fundamental

No. 14-60747

fairness or integrity of the proceedings. Accordingly, Marshall has not established reversible error under the plain error doctrine.[4]

2.

Next, Marshall argues that the district court erred in considering the Wells Fargo Bank and Bancorp South robberies when calculating his total offense level under the Sentencing Guidelines. The district court, based in part on Marshall's involvement in the Bancorp South and Wells Fargo Robberies, found that Marshall had an adjusted offense level of 35 for his conspiracy convictions; after applying a multiple count adjustment pursuant to U.S.S.G. § 3D1.4, Marshall's total offense level was calculated at 38. On appeal, Marshall contends that the district court erred because the jury never expressly found him guilty of committing those robberies, either as part of a separate substantive offense or as part of the conspiracy convictions. Again, Marshall did not object to this alleged error during sentencing, so we review the issue under the plain error doctrine.

We find that Marshall has failed to demonstrate error, much less the "clear or obvious" error necessary to obtain relief under the plain error doctrine. Marshall contends that the district court erred because an offense level was calculated based on each bank robbery listed as an overt act in furtherance of the objects of the conspiracies, even though the jury failed to specify which overt act or acts were proved in connection with the conspiracies.

---

[4] Moreover, Marshall's argument that the verdict form shows the jury rejected the aggravating element of brandishing is unpersuasive. The case cited by Marshall, *United States v. Pizarro*, 772 F.3d 284 (1st Cir. 2014), relied on *Alleyne* to hold that an error is always plain when the sentencing court imposes a sentence for an aggravated crime the jury has expressly rejected. *Pizarro*, 772 F.3d at 296. Here, however, the jury did not expressly reject the brandishing element. Instead, the verdict form, through judicial oversight, allowed the jury to find only that the defendant "used or carried" a firearm. In other words, nothing in the jury verdict here indicates that the jury considered, and expressly rejected, a finding that Marshall had "brandished" a firearm.

However, regardless of its findings as to specific overt acts, the jury found that Marshall had committed all three objects of the two conspiracy counts (i.e., bank robbery; using, carrying, or brandishing a firearm during a bank robbery; and interstate transport of stolen vehicles).  The overt acts were not required to be charged as separate substantive offenses because the offense of conspiracy and the substantive offense "are separate and distinct crimes."  *See United States v. Duval*, 846 F.2d 966, 976 (5th Cir. 1988).  Furthermore, a court may consider uncharged or acquitted conduct in sentencing a defendant in accordance with U.S.S.G. § 1B1.2(d).  *See, e.g., United States v. Coleman*, 349 F.3d 1077, 1088 (8th Cir. 2003) (holding that, even though the indictment only alleged two bank robberies, a defendant could be sentenced based upon five robberies because "a defendant may be held responsible for any of the acts of the conspiracy").  Accordingly, the district court did not err by calculating Marshall's offense level using the Wells Fargo and Bancorp South bank robberies.

3.

Marshall next contends that the district court erred in having his sentence for the interstate transportation convictions run consecutively to, instead of concurrently with, his sentence for the bank robbery convictions. "Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."  18 U.S.C. § 3584(a).  Absent a statutory mandate, a district court may order the sentences to run consecutively; the court, however, must consider the various sentencing factors listed in 18 U.S.C. § 3553(a) when deciding whether it is appropriate to have the sentences to run consecutively. *See* 18 U.S.C. § 3584(b).  The sentences for Marshall's bank robbery and interstate transportation convictions were not required by statute to run consecutively.  *See* 18 U.S.C. §§ 2113(a), (d); 18 U.S.C. § 2312.  The district

court, however, mistakenly concluded that the sentences were required to run consecutively.[5]    As a result, the court did not conduct an analysis of the § 3553(a) factors when ordering that Marshall's sentences run consecutively.

We hold that, under the plain error doctrine, the district court did not commit reversible error.  Although the district court committed clear or obvious error in mistakenly believing that Marshall's sentences were required by statute to run consecutively, Marshall has failed to show that the district court's oversight "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *See Olano*, 507 U.S. at 732.

The district court did err in asserting that Marshall's bank robbery and interstate transportation convictions required consecutive sentences, thus foregoing consideration of the sentencing factors listed in 18 U.S.C. § 3553(a).  As we have repeatedly emphasized, however, "[t]he focus of plain error review should be 'whether the severity of the error's harm demands reversal.'" *United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) (en banc) (quoting *United States v. Farrell*, 672 F.3d 27, 36 (1st Cir. 2012)); *see also United States v. Marcus*, 560 U.S. 258, 266 (2010) (stating that circuit courts do not have to exercise their discretion for any possible error and that an error creating a "tiny risk [of actually resulting in harm to the defendant] . . . is most unlikely to cast serious doubt on the 'fairness,' 'integrity,' or 'public reputation' of the judicial system").

In the present matter, requiring the interstate transportation and bank robbery sentences run concurrently, instead of consecutively, would reduce Marshall's sentence from 1,704 months to 1,584 months (i.e., 142 years to 132

---

[5]  The district court stated that "each of these sentences represents the maximum penalty provided by statute, and to run them consecutively, as the term has been used throughout this sentencing statement, is a requirement also by statute.  This results in a total term of incarceration of 1,704 months or 142 years."

years). *See* 18 U.S.C. § 2312. The district court had the authority to impose either sentence; indeed, the firearm convictions, standing alone, authorized the court to impose a sentence of up to life imprisonment. *See United States v. Sias*, 227 F.3d 244, 246–47 (5th Cir. 2000). Moreover, there is virtually no risk that the sentence imposed of 142 years will cause Marshall any greater harm than a sentence of 132 years. Marshall was thirty-four-years old at the time of conviction. Thus, either sentence is, in effect, one of life imprisonment. This practical consideration, coupled with the fact that the district court had the authority to render the sentence actually imposed, compels us hold that the district court's sentencing error does not affect the fundamental "fairness, integrity, or public reputation" of the federal courts. We also note that Marshall's appellate counsel declined to argue this alleged sentencing error at oral argument, despite being asked about the issue. Accordingly, we decline to exercise our discretion under the plain error doctrine.

4.

Next, Marshall asserts that the district court erred in adding one point to his criminal history score for a marijuana possession conviction. Marshall urges that the evidence on record does not establish whether he was represented by counsel when convicted of marijuana possession. Again, Marshall did not object to the alleged error at sentencing, so our review is for plain error.

Marshall's argument fails because he has not shown the existence of a plain or obvious error. "[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004). In the present matter, Marshall concedes that the record does not establish whether he was represented by counsel for the proceedings that led to the disputed conviction, or whether he waived counsel in the

misdemeanor case. Thus, Marshall has failed to show that the district court's consideration of the previous conviction for marijuana possession amounted to plain or obvious error. *See United States v. Rubalcaba-Vazquez*, 281 F. App'x 354, 355 (5th Cir. 2008) (per curiam) (unpublished) ("[T]he record does not show whether these convictions were uncounseled because Rubalcaba-Vazquez validly waived his right to counsel or because he was uninformed of his right to counsel. Consequently, Rubalcaba-Vazquez has not carried his burden of showing that the disputed convictions were constitutionally infirm, nor has he shown plain error in connection with his sentence.").

5.

Finally, Marshall challenges several sentencing enhancements that the district court applied when calculating the offense levels for some of the robbery-related counts. Unlike most of the alleged sentencing errors at issue in this appeal, Marshall did object to these sentencing enhancements. Thus, we do not apply the plain error doctrine; instead "[w]e review the application of the sentencing guidelines *de novo* and the district court's findings of fact for clear error." *United States v. Jefferson*, 258 F.3d 405, 412 (5th Cir. 2001).

First, Marshall contends that the district court erred in applying a four-level enhancement under the Guidelines for "abduct[ing] [a person] to facilitate commission of the offense." U.S.S.G. § 2B3.1(b)(4)(A). Under the Guidelines, an "abduction" occurs when "a victim [is] forced to accompany an offender to a different location." U.S.S.G. § 1B1.1 cmt. n.1(A), § 2B3.1 cmt. n.1. Undisputed evidence shows that, for the three robberies where the abduction enhancement was applied, the robbers removed bank employees and customers from individual offices at gunpoint, compelled the victims to move to the main lobby of the bank, and forced the victims to lie on the ground as the robbers completed their crime. Marshall, however, contends that such movement—occurring entirely within the confines of the bank building—is insufficient to

establish that the bank workers and customers were moved to a "different location," which, as we have stated, is required for the abduction enhancement to apply.

We conclude that the district court did not err in imposing the abduction enhancement. This circuit has repeatedly held that "the term 'different location' should be interpreted flexibly on a case by case basis." *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010). Thus, an abduction enhancement is proper "even though the victim remained within a single building" when the forced movement of the victim facilitates the commission of the offense or escape. *Id.* at 474. Indeed, this court has routinely held that victims are "abducted" for the purposes of a bank robbery even when they never leave the bank, so long as the victims are compelled to move from one area of the bank to another to aid in the commission of the offense or to more easily facilitate escape. *See, e.g.*, *United States v. Smith*, 822 F.3d 755, 763–64 (5th Cir. 2016); *United States v. Holiday*, 582 F. App'x 551, 552 (5th Cir. 2014). Accordingly, the district court did not err in imposing a four-level increase for abduction under U.S.S.G. § 2B3.1(b)(4)(A).

Next, Marshall argues that the district court erred in applying the six-level enhancement for "otherwise using a firearm" for two of the robberies. *See* U.S.S.G. § 2B3.1(b)(2)(B). Under the Guidelines, "otherwise used" means "that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm." U.S.S.G. § 1B1.1 cmt. n.1(I). Marshall urges that the evidence is sufficient to show only that he "brandished" a firearm, but not that he "otherwise used" a firearm in the commission of any robbery. This argument fails. In distinguishing between when a firearm is "brandished" and "otherwise used," this circuit has clarified that "[d]isplaying a weapon without pointing or targeting should be classified as 'brandished,' but pointing the weapon at any individual or group of

individuals in a specific manner should be 'otherwise used.'" *United States v. Dunigan*, 555 F.3d 501, 505 (5th Cir. 2009). As we have already discussed, there is evidence that Marshall pointed his gun at specific victims during the Wells Fargo Bank and Bancorp South robberies in an effort to compel their movement or compliance. Thus, the district court did not err in applying a six-level enhancement for "otherwise using" a firearm.

Finally, Marshall contends that the district court clearly erred in applying a two-level enhancement to the offense level of the Bancorp South Bank robbery on the basis that Marshall was an "organizer or leader" of the robbery. *See* U.S.S.G. § 3B1.1(c). Evidence at trial, however, showed that Marshall recruited Moore (one of the cooperating witnesses) to participate in the Bancorp South Bank robbery; this court has previously held that evidence of recruitment supports the application of the two-level role enhancement. *United States v. Giraldo*, 111 F.3d 21, 24–25 (5th Cir. 1997); *accord United States v. Ceballos–Amaya*, 470 F. App'x 254, 262 (5th Cir. 2012) (per curiam) (unpublished). Accordingly, the district court did not err in applying the enhancement for Marshall's role in the robbery as a "leader or organizer."

IV.

Lastly, we note that both defendants have raised ineffective assistance of counsel claims related to alleged errors by trial counsel. Kiel argues that his trial counsel's failure to move for a mistrial after the district court excused the juror amounted to ineffective assistance of counsel. Marshall contends that his trial counsel rendered ineffective assistance when his counsel failed to properly object below to numerous alleged evidentiary and sentencing errors, thus subjecting them to plain error review on appeal. Marshall further urges that his counsel was ineffective in failing to move for the exclusion of certain DNA evidence.

No. 14-60747

We decline to address the defendants' ineffective assistance claims at this time.  "The general rule in the Fifth Circuit is that ineffective assistance of counsel claims cannot be resolved on direct appeal if they were not raised before the district court." *United States v. Wallace*, 759 F.3d 486, 497–98 (5th Cir. 2014).  The rule exists because "typically at this stage, the record is not sufficiently developed to allow th[e] court to meaningfully assess the merits of the defendant's allegations."  *Id.* at 498.  We thus decline to consider the defendants' ineffective assistance of counsel claims at this time.  The defendants are, of course, free to pursue these claims in a later post-conviction proceeding.

V.

For the foregoing reasons, the defendants have not demonstrated any reversible error, either with respect to the trial proceedings or their sentences. Accordingly, the district court's judgment is, in all respects,

AFFIRMED.